___



**SO ORDERED,**

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.
___

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSPPI**

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | | |
| JAMES RICHARD BEECROFT, | ) | Case No.: | 12-14217-JDW |
| | ) | | |
| Debtor. | ) | Chapter: | 7 |

___

| | | | |
|---|---|---|---|
| B & B UNLIMITED, INC. and | ) | | |
| CECIL BURNS, | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | | |
| v. | ) | A.P. No.: | 13-01007-JDW |
| | ) | | |
| JAMES RICHARD BEECROFT, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM OPINION AND ORDER**

This adversary proceeding is before the Court on a Complaint to Determine Dischargeability and for Other Relief (the "Complaint")(Dkt. # 1) filed on February 1, 2013, by B & B Unlimited, Inc. ("B & B") and Cecil Burns (together with B & B, the "Plaintiffs") against debtor James Richard Beecroft (the "Defendant"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b) and the United States District Court for the Northern District

1

of Mississippi's Order Of Reference Dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(B), (I) and (J).

The Plaintiffs allege that the Defendant fraudulently sold the same mobile home twice, first to B & B and then later to a third party. The two sales led to inevitable litigation, and Plaintiffs alleged in the Complaint that damages arising from the transactions are nondischargeable pursuant to 11 U.S.C. § 727. At the parties' request and pursuant to the Scheduling Order entered on May 6, 2013 (Dkt. # 9), no pre-trial conference was held. A trial on the adversary proceeding was held on April 24, 2014, at which time Plaintiff Cecil Burns, counsel for the Plaintiffs, J. Keith Pearson, the Defendant, and counsel for the Defendant, James W. Amos, all appeared. At the outset of the trial, Mr. Pearson announced the Plaintiffs' decision – without objection from the Defendant[1] – to travel exclusively under 11 U.S.C. § 523(a)(6) and abandon all arguments under § 727.

The trial was held and testimony was given by both Mr. Burns and the Defendant, documents were received into evidence and argument made by counsel. At the close of the trial, the parties were ordered to brief the issue of whether or not the selling of the property multiple times by the Defendant was *per se* willful and malicious action as contemplated under § 523(a)(6). Upon submission of the parties' briefs, the Court took the matter under advisement. The Court must decide (1) whether or not the Plaintiffs hold a valid claim against the Debtor, and (2) whether the Plaintiffs' claims are nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The

---

[1] See Fed. R. Civ. P. 15(b)(2), made applicable by Fed. R. Bankr. P. 7015. Even had there been an objection, the amendment would have been allowed under Fed. R. Civ. P. 15(b)(1).

2

Court has considered the pleadings, testimony, admitted evidence and applicable law, and finds and concludes as follows.[2]

## FINDINGS OF FACT

B & B is a Mississippi corporation wholly owned by Mr. Burns. B & B owns Techville Mobile Home Park in Oxford, Mississippi. Although B & B owns the mobile home park, neither it nor Mr. Burns own the mobile homes located therein. Instead, tenants rent lots in the park on which to put their own mobile homes, and pay B & B monthly rent for the use of each individual lot. The Defendant rented two lots (Lots # 27 and # 45), at a monthly rate of $165.00 each.[3]

After entering into the lease agreements, Defendant missed several payments on both Lot 27 and 45. In October 2008, the parties reached an agreement to satisfy the arrearage on Lot 27. As testified to at trial by both Mr. Burns and the Defendant, the parties agreed that Defendant would deliver a bill of sale to B & B for the mobile home on Lot 27 and the Lot 27 rent arrearage would be forgiven, but Defendant would continue to pay rent for Lot 27 until B & B could find a new tenant. No other consideration was paid. Although an unusual sale arrangement, it was credibly explained at trial that the Defendant agreed to the deal so that he would not be evicted from both lots and sued for the back rent on each lot. In other words, the Defendant made the business decision that it was cheaper for him to transfer the Lot 27 mobile home (which had minimal value) to B & B and continue to pay rent on Lot 27 until a new tenant could be found, than it would have been to spend the money to move both mobile homes and face a lawsuit for

---

[2] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. To the extent any of the findings of fact are considered conclusions of law, they are adopted as such. To the extent any of the conclusions of law are considered findings of fact, they are adopted as such.

[3] The monthly rent was determined through oral testimony, as the lease contracts were not introduced into evidence.

3

back rent.  Defendant agreed to help locate a tenant for Lot 27 in an attempt to stop his liability for the rent as soon as possible.

In accordance with the agreement, Defendant prepared a bill of sale to B & B for the mobile home, dated November 1, 2008 (the "First Bill of Sale")(Ev. P-1).  The Defendant also delivered a letter to the Mr. Burns, along with the First Bill of Sale, that memorialized some of the terms of the parties' agreement (the "Letter")(Ev. P-2).  The Letter reflects a portion of the parties' agreement, but does not include the agreement that Defendant would continue to pay rent until a new tenant could be found.  Regardless, Defendant did continue to pay Lot 27 rent until the subsequent sale detailed below.

Sometime after execution of the First Bill of Sale, Mr. Burns indicated by telephone to the Defendant that he believed he had found a new tenant for the mobile home on Lot 27.  Sometime thereafter, Mr. Burns again contacted Defendant by telephone, and told him that the potential new occupant had fallen through, and to continue paying rent.  Mr. Burns testified that he was only indicating that the potential new tenant would not be leasing Lot 27, and that Defendant was to continue paying rent pursuant to the agreement.  Defendant testified that he interpreted this conversation to mean that the entirety of the sale agreement between Defendant and B & B had been canceled.  The Defendant stated that, believing that his arrangement with B & B had been canceled, he was once again the owner of the mobile home, despite the fact that a bill of sale conveying the mobile home back to him was not prepared or delivered.

Several months later, the Defendant prepared and executed a second bill of sale for the mobile home to Leslie and Robert Ray (the "Rays"), which was admitted into evidence (the

4

"Second Bill of Sale")(Ev. P-3).  Though the Second Bill of Sale is undated, the parties agree that the second sale took place sometime in July 2009.[4]

Sometime after the second conveyance, the Rays moved into the mobile home and began paying rent to B & B.  Sometime in 2010, the Rays stopped making payments.  It was then that the Plaintiffs discovered that the Rays were claiming ownership of the mobile home, relying on the Second Bill of Sale.  The Rays now claim ownership of the mobile home, have filed suit in the Circuit Court of Lafayette County against the Plaintiffs, and have further refused to pay the rent on Lot 27.[5]  Plaintiffs have now incurred – and are continuing to incur – costs in defending that lawsuit and B & B's ownership of the mobile home.

On October 4, 2012, Defendant filed his chapter 7 bankruptcy petition.

Plaintiffs allege that by selling the mobile home to B & B, and then later selling the same mobile home to the Rays, Defendant committed slander of title, consequently giving rise to damages that are nondischargeable pursuant to 11 U.S.C. §523(a)(6).

Although the Defendant testified at trial that he did not know that B & B owned the property, and that he believed that the Plaintiffs had nullified the First Bill of Sale, the Court finds that the Defendant's testimony is without credibility or merit.  The Defendant admitted at trial that he had participated in numerous transactions involving the sale of real and personal property over a period of several years.  He further admitted that he had substantial experience with general business practices and has owned his own business for seventeen years.  Defendant has bought and sold two homes and over ten vehicles in his lifetime.  Furthermore, he has bought and sold multiple properties for his business.  Each time, written documentation was required to

---

[4] The certificate of title for the mobile home was not introduced into evidence.

[5] It is unclear why the Rays contend that they owe no rent on Lot 27.  Regardless of ownership of the mobile home, it appears undisputed that B & B owns the lot.  In any event, the Rays are not a party to this adversary proceeding and no finding is being made with regard to the dispute between the Plaintiffs and the Rays.

evidence the transfers. The Defendant's own testimony confirms that he has a familiarity with business transactions and the process of buying and selling real and personal property.

The Defendant testified that when Mr. Burns contacted him to say that "the deal was off," the Defendant was under the impression that B & B was canceling their arrangement, and as such, the First Bill of Sale and conveyance of the mobile home were void. However, the Defendant was unable to point to any evidence that might support or corroborate his assumption. Most notably, the First Bill of Sale was not returned, the Defendant made no effort to have a new bill of sale executed conveying the mobile home back to him, and there was no further communication between the parties regarding the nullification of the agreement or the sale. The Court finds the lack of supporting evidence particularly compelling given that when the First Bill of Sale was executed, the Defendant sent the Letter, outlining some of the terms of the agreement. No such letter or follow-up communication was had between the parties at the time the Defendant believed the agreement to be canceled and the property transferred back to him. In the aggregate, there is a dearth of evidence that might support the Defendant's testimony that he believed he was once again the owner of the mobile home when he executed the Second Bill of Sale.

## CONCLUSIONS OF LAW

In order for the Court to conclude that any debt owed to the Plaintiffs by the Defendant is nondischargeable, the Plaintiffs must first prove that they hold a valid claim against the Defendant for slander of title resulting in damages. Then, the Plaintiffs must demonstrate how and why that claim is nondischargeable pursuant to Title 11 of the United States Code. As explained by the United States Supreme Court, "[t]he validity of a creditor's claim is determined by rules of state law. Since 1970, however, the issue of nondischargeability has been a matter of

6

federal law governed by the terms of the Bankruptcy Code." *Grogan v. Garner*, 498 U.S. 279, 283-84, 111 S. Ct. 654, 657-58, 112 L. Ed. 2d 755 (1991)(internal citations omitted). Thus, this Court must necessarily begin its analysis with the underlying state law claim for slander of title.

I. **Slander of Title**

A state law cause of action for slander of title "lies where a person claims ownership of another's property, 'thereby preventing its lease or sale to another....'" *Mize v. Westbrook Const. Co. of Oxford, LLC*, 2013 WL 3607468 (Miss. Ct. App. July 16, 2013), reh'g denied (Jan. 14, 2014)(citing *Walley v. Hunt,* 212 Miss. 294, 304, 54 So.2d 393, 396 (1951). The action is "commonly employed to describe words or conduct which bring or tend to bring in question the right or title of another to particular property, as distinguished from the disparagement of the property itself." *Walley*, 212 Miss. at 304. One who commits slander of title against the property of another may be held liable in a civil action for damages. *Id*.

The elements of slander of title are:

(1) That there was a false statement concerning the real property owned by the plaintiff;

(2) That the false statement was published to others;

(3) That the false statement was published maliciously; and

(4) That publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.

*Jeanes-Kemp, LLC v. Johnson Controls, Inc.,* 2012 WL 627515 (S.D. Miss. Feb. 24, 2012).[6]

A. **False Statement Concerning Real Property Owned by the Plaintiff**

"The false statement may consist of an assertion that plaintiff has no title to the property of which he is the ostensible owner, or that his title is defective, or that defendant has an interest

---

[6] The elements of slander of title as cited refer only to real property. However, the recitation of elements is particular to the facts of that case. The claim of slander of title is not limited to real property alone. *See, e.g., Stubblefield v. Walker*, 566 So.2d 709 (Miss. 1990).

7

in or lien upon the property." *Walley*, 212 Miss. at 305. For purposes of a slander of title action, a statement may be written, printed, or spoken. *Id*. When the Defendant executed the Second Bill of Sale, he represented that he owned the mobile home in question. Asserting or claiming ownership of the mobile home, when it rightfully belonged to B & B, constitutes utterance of a false statement concerning property owned by B & B, thereby meeting the first element.

### B. Publication of the False Statement to Others

Publication of the false statement must be made to a third party, and not just to the owner of the property. Looking to guidelines established for tort liability for slander and/or libel (for which "publication" is also an essential element), the communication or statement must be made to or in the presence of a third party who is able to receive and understand the communication. *See Smith v. Jones*, 335 So.2d 896, 897 (Miss. 1976). The Defendant "published" the statement to the Rays when he executed the Second Bill of Sale for the property and delivered it to them. The Rays received it and understood that the Second Bill of Sale conveyed title to them.

### C. Malicious Publication of the False Statement

The statement in question must have been made not only falsely, but maliciously as well. *Welford v. Dickerson,* 524 So.2d 331, 334 (Miss.1988). The Supreme Court of Mississippi explored malice in relation to slander of title in *Phelps v. Clinkscales,* 247 So.2d 819, 821 (Miss.1971), stating, "malice exists in the mind and usually is not susceptible of direct proof. The law determines malice by external standards; a process of drawing inferences by applying common knowledge and human experience to a person's statements, acts, and the surrounding circumstances." *Accord Butler v. City of Eupora*, 725 So. 2d 158, 161 (Miss. 1998); *Wise v. Scott,* 495 So.2d 16, 20 (Miss.1986). The Court may infer malice from the defendant's actions and the circumstances in the case. *Mize*, 2013 WL 3607468 at *6. Weighing the credibility of

the witnesses and the evidence before it, specifically Defendant's substantial business dealings and prior transfers of real and personal property through deeds and bills of sale (including Defendant's preparation of all documents in the transactions at issue here), the Court finds that the Defendant did not sincerely believe himself to be the owner of the mobile home after November 2008.  *See Phelps*, 247 So.2d at 821.  The Defendant was aware that B & B was the true owner of the mobile home, he did not sincerely believe that the first sale had been revoked or canceled, and the Defendant thus acted with malice when he executed the Second Bill of Sale, thereby attempting to sell property for which he knew he was not the legal owner.

### D. Publication of the False Statement Concerning Title to the Property Caused the Plaintiff Pecuniary Loss in the Form of Special Damages.

As previously stated, "[o]ne who commits slander of title against the property of another may be held liable in a civil action for damages."  *Walley*, 212 Miss. at 304.  Special damages – the type required to maintain an action for slander of title – are limited to actual pecuniary loss, and must be specially pleaded and proved.  *F.A.A. v. Cooper*, 132 S. Ct. 1441, 1451, 182 L. Ed. 2d 497 (2012).  Attorney's fees have routinely been categorized as "special damages" which must be specifically pleaded under Federal Rule of Civil Procedure 9(g).[7]  *United Industries, Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 764 (5th Cir. 1996); *see also Maidmore Realty Co., Inc. v. Maidmore Realty Co., Inc.,* 474 F.2d 840, 843 (3d Cir.1973); *Western Casualty & Sur. Co. v. Southwestern Bell Tel. Co.,* 396 F.2d 351, 356 (8th Cir.1968).

Although it is clear that the Defendant is generally liable for B & B's pecuniary loss in the form of special damages, the amount of those damages is not yet determined.  Because the matter of the ownership of the mobile home is still being litigated between the Plaintiffs and the Rays in state court, and that litigation has not yet concluded, damages, including attorney's fees,

---

[7] Fed. R. Civ. P. 9(g) is made applicable by Fed. R. Bankr. P. 7009.

cannot be calculated at this time. However, it has been held that the requirement to specifically plead and prove special damages does not foreclose recovery of attorney's fees not yet determinable. As held in *Cotton Bros. Baking Co., Inc. v. Industrial Risk Insurers*, 102 F.R.D. 964 (W.D. La. 1984), "this does not mean that plaintiff must submit a detailed tally sheet of hours and costs. More properly, such a list should be submitted after the case has been disposed of and attorney's fees have been granted." *Id.* at 697 (citing *Johnson v. Georgia Hwy. Express, Inc.,* 488 F.2d 714 (5th Cir.1974)).

However, the Court deems it important to note at this time that any rent allegedly owed by the Rays will not be included in the total damages owed by the Defendant. Pursuant to the parties' agreement, Defendant's obligation to pay rent on Lot 27 ceased when the Rays became the new tenants.[8] Any such unpaid rent that has accrued since the Rays moved in is a matter between B & B and the Rays. Further, while the Defendant does owe back rent on Lot 45, that rent is unrelated to the slander of title claim and is simply a unsecured claim in the bankruptcy case that will not be included in any part of the nondischargeable judgment.

## II. 11 U.S.C. § 523(a)(6)

Having concluded that B & B holds a claim for slander of title,[9] the Court must next determine whether that claim is dischargeable. The Plaintiffs elected at trial to travel exclusively under 11 U.S.C. § 523(a)(6). Section 523(a)(6) provides, in pertinent part, as follows:

> **(a)** A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

---

[8] The Defendant therefore owes no rent on Lot 27. Forgiveness of the arrearage served as consideration for the conveyance of the mobile home to B & B. Following the conveyance, Defendant made all rent payments on Lot 27 until the Rays became the new tenants.

[9] While Mr. Burns is a Plaintiff in this adversary proceeding, the conveyance of the mobile home was to B & B and B & B owns the mobile home park. The transaction at issue was between the Defendant and B & B, not Mr. Burns personally. As such, only B & B has a claim for slander of title.

\*\*\*\*

**(6)** for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(6).

In determining whether or not a debt arises from "willful and malicious injury," the United States Supreme Court has held that subsection (a)(6) applies to "acts done with the actual intent to cause injury," and does not except from discharge debts arising only from negligently or recklessly inflicted injuries. *Kawaauhau v. Geiger*, 523 U.S. 57, 59, 118 S.Ct. 974, 975-76, 140 L.Ed.2d 90 (1998). Following the Court's guidelines in *Kawaauhau*, the Fifth Circuit Court of Appeals has held in that "[a]pplying the Supreme Court's pronouncement… for a debt to be nondischargeable, a debtor must have acted with 'objective substantial certainty or subjective motive' to inflict injury." *In re Williams*, 337 F.3d 504, 508 (5th Cir. 2003) (citing *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998)).

As detailed above, Plaintiffs have suffered an injury. However, as not all debts arising from injurious actions are nondischargeable – only those undertaken with actual intent to cause injury – the Court must still determine whether or not the debts are excepted from discharge under the "willful and malicious" standards established by the higher courts.

**A. "Willful"**

"Kawaauhau held that a willful injury, in this context, is a '*deliberate or intentional injury,* not merely a *deliberate or intentional act* that leads to injury.'" *In re Shcolnik*, 670 F.3d 624, 629 (5th Cir. 2012)(emphasis original). The Fifth Circuit has held that this intent may be found where the Defendant acted with "objective substantial certainty or subjective motive" to inflict injury. *Williams*, 337 F.3d at 508 (citing *Miller*, 156 F.3d at 603).

11

As already covered in depth above, the Court finds that the Defendant was aware that B & B owned the mobile home, that the First Bill of Sale had not been revoked, and that the Defendant knowingly attempted to sell property that did not belong to him. The Court finds that the Defendant knew with objective substantial certainty that his actions would inflict injury, as he knew that he was selling the property twice which would inevitably give rise to a title dispute between the two buyers.

B. "Malicious"

Federal law rather than state law governs the definition given to "malicious" in § 523(a)(6). *Miller*, 156 F.3d at 604. Although there has been a divide among the Circuit Courts of Appeal[10] in interpreting the meaning of "malicious" following *Kawaauhau*, the Fifth Circuit Court of Appeals has aggregated the terms "willful and malicious," creating a single standard that an injury is "'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Miller*, 156 F.3d at 606. Thus, for the same reasons the Court finds the Defendant's actions to be "willful," the Court finds that the Defendant's actions are likewise "malicious."

## CONCLUSION

Based on the documentary evidence presented and testimony heard at trial, this Court finds that B & B has established both that the Defendant is liable for slander of title and that the debts incurred as a result are nondischargeable pursuant to 11 U.S.C. § 523(a)(6). As to the state law claim, the Court concludes that the Defendant fabricated and maliciously published to the Rays a false statement concerning the ownership of B & B's property, and that the publication of

---

[10] *See, e.g., In re Su*, 290 F.3d 1140, 1144 (9th Cir. 2002); *In re Jercich*, 238 F.3d 1202, 1208 (9th Cir. 2001); *In re Markowitz,* 190 F.3d 455, 465 n. 10 (6th Cir.1999); *In re Scarborough*, 171 F.3d 638, 641 (8th Cir. 1999).

that false statement concerning title to the property caused the Plaintiffs pecuniary loss in the form of special damages. By the Defendant's own admission that he is well-versed in the process of buying and selling property, the Court finds that there is no evidence to support the Defendant's claim that he believed the sale of the mobile home to B & B had been canceled or voided. There can be little doubt that the Defendant understood and appreciated the nature and consequences of his actions when he twice executed bills of sale for the same property.

As to the nondischargeability of the state law claim, the Defendant's actions were willful and malicious because his actions were carried out with objective substantial certainty to inflict injury. Defendant knew that he was not the owner of the mobile home when he executed the Second Bill of Sale; he knew that his actions would result in conflicting claims of ownership between B & B and the Rays; and he knew that damages would occur as a result of the inevitable litigation. The Court finds that the Defendant is liable for slander of title, and that his actions were carried out with objective, substantial certainty to inflict injury. As such, the Court finds that the yet unliquidated debt owed to B & B is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Accordingly, it is hereby

**ORDERED, ADJUDGED** and **DECREED** that B & B holds a claim that is yet to be fully liquidated.

It is further **ORDERED** that judgment shall be entered in favor of B & B as to the § 523(a)(6) claim, with the judgment declared nondischargeable in an amount to be determined following conclusion of the state court litigation between the Rays and the Plaintiffs.

The Plaintiffs are hereby **ORDERED** to file status reports as to the state court litigation every September 1 and March 1 until that litigation is concluded. Upon conclusion of the litigation, B & B shall file an evidentiary submission detailing all damages claimed. Defendant

will have an opportunity to object to the damage calculation and, if necessary, a hearing will be held.  A final judgment will be entered following the damages phase of this adversary proceeding.

##END OF ORDER##